*NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JULIO ROMAN-MATOS, | Civil Action No. 18-2095 (JLL) |
| Petitioner, | |
| v. | OPINION |
| PATRICK N. NOGAN, et al., | |
| Respondents. | |

**LINARES**, Chief District Judge:

Presently before the Court is the petition for a writ of habeas corpus of Julio Roman-Matos ("Petitioner") brought pursuant to 28 U.S.C. § 2254 challenging his state court murder conviction. (ECF No. 1). Respondents filed an answer to the petition (ECF No. 8), to which Petitioner did not reply. For the following reasons, the Court will deny the petition and no certificate of appealability shall issue.

## I. BACKGROUND

In denying Petitioner's petition for post-conviction relief (PCR), the state trial court summarized the factual and procedural background of Petitioner's conviction as follows:

> On March 27, 2011, Petitioner Julio Roman-Matos . . . returned to 1315 Summit Avenue, apartment 3F[,] in Union City with his ex-girlfriend Marilu Bohorquez after an evening out celebrating her birthday with friends. An argument ensued between the parties over a text message Ms. Bohorquez had received from another man, that Petitioner considered inappropriate. During the course of the argument, Petitioner grabbed Ms. Bohorquez's neck and choked her until she was unconscious. Petitioner subsequently called 911 and advised the dispatcher that he had killed his "wife."

1

> On August 23, 2011, Petitioner was indicted for murder, in the first degree, in violation of N.J.S.A. 2C:11-3(a)(1) or 2C:11-3(a)(2).
>
> On March 19, 2012, Petitioner pled guilty . . . to murder amended to aggravated manslaughter in the first degree, in violation of N.J.S.A. 2C:11-4(a)(1). Pursuant to the plea agreement that plea counsel negotiated with the State, petitioner would be sentenced between 10 and 20 years.
>
> On March 21, 2012, Petitioner filed a *pro se* motion to retract his guilty plea, and new counsel was assigned. Prior to sentencing, Petitioner withdrew his motion to retract his guilty plea. At sentencing, [the trial judge] questioned Petitioner extensively regarding his decision to withdraw his motion to retract his guilty plea. On January 8, 2013, [the trial judge] sentenced Petitioner to 18 years' imprisonment with an 85 percent parole disqualifier pursuant to the No Early Release Act ("NERA").
>
> On April 9, 2013, Petitioner filed a Notice of Appeal to the Appellate Division pursuant [and his appeal was heard as an] Excessive Sentence Argument. On November 20, 2013, the Appellate panel affirmed his sentence.

(Document 11 attached to ECF No. 8 at 1-2).

Petitioner filed his initial PCR petition in December 2013. (*Id.* at 2). The trial court denied that petition after appointing counsel by way of a decision issued on September 16, 2014. (*Id.*). Petitioner appealed, and the Appellate Division summarily affirmed by way of an order dated September 28, 2015. (Document 16 attached to ECF No. 8). Petitioner's petition for certification was thereafter denied by the New Jersey Supreme Court on February 5, 2016. (Document 20 attached to ECF No. 8). Petitioner thereafter filed a second PCR petition, which was denied on September 1, 2016. (Document 22 attached to ECF No. 8). Petitioner appealed (*see* Document 23 attached to ECF No. 8), and his appeal apparently remains pending at this time. (ECF No. 8 at 3).

## II. DISCUSSION

## A. Legal Standard

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." The petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, 567 U.S. 37, 41 (2012). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for the purposes of the statute where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 125 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to

be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**B. Analysis**

In his petition, Petitioner asserts that he received ineffective assistance of counsel in relation to his guilty plea.[1] As the Third Circuit has explained,

> The [Supreme] Court has []emphasized that "[d]efendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, [566 U.S. 156, 162-65] (2012).
>
> When addressing a guilty plea, counsel is required to give a defendant enough information "'to make a reasonably informed decision whether to accept a plea offer.'" *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)), *cert. denied*, --- U.S. ---, 134 S.Ct. 1340[] (2014). We have identified potential sentencing exposure as an important factor in the decisionmaking process, stating that "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *Day*, 969 F.2d at 43. In order to provide this necessary advice, counsel is required "to know [the applicable rules and guidelines] and the relevant [legal] precedent[.]" *United States v. Smack*, 347 F.3d 533, 538 (3d Cir. 2003). However, "an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where . . . an adequate plea hearing was conducted." *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007).

*United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015).

---

[1] Although it is clear that Petitioner has exhausted his main claim – that counsel failed to advise him as to certain collateral consequences of his guilty plea – it is not clear from the record whether Petitioner's remaining claims were ever actually considered on the merits by either the Appellate Division or New Jersey Supreme Court. To the extent that Petitioner did fail to fully exhaust any of his claims, however, this Court can and does reject Petitioner's remaining claims on the merits pursuant to 28 U.S.C. § 2254(b)(2).

Where a petitioner is able to show that his counsel was deficient in advising him as to a plea, he is still required to show that he was prejudiced by counsel's failures. This requires a petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [which i]n the context of pleas [requires] a [petitioner] show the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163. Where a petitioner pled guilty, "[i]n order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Bui*, 795 F.3d at 367 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

In his chief claim, Petitioner asserts that his plea counsel was constitutionally deficient in failing to explain to Petitioner that he could have his parental rights terminated as a collateral consequence of his plea of guilty to the aggravated manslaughter of the mother of his children. As this Court explained in denying Petitioner's motion for summary judgment,

> Although plea counsel can be ineffective when he fails to ensure that a criminal defendant is informed prior to his guilty plea of the consequences of his guilty plea which are either a direct result of the plea or are severe and a virtual certainty, such as deportation, *see Padilla v. Kentucky*, 559 U.S. 356, 365-375 (2009), federal courts have frequently held that neither counsel nor the Court is required to inform Petitioner of those consequences of a guilty plea which are either uncertain or are beyond the power of the sentencing court to predict or control. *See, e.g., United States v. Nicholson*, 676 F.3d 376, 381-82 (4th Cir. 20120) (defendant need not be informed that he may lose federal benefits following a plea of guilty); *United States v. Youngs*, 687 F.3d 56, 61-63 (2d Cir. 2012) (defendant need not be informed of possibility of later civil commitment as a sexually violent predator which was a possible, but not certain consequence of a guilty plea). As the loss of Petitioner's parental rights was merely a possible, but not a certain consequence of his guilty plea to killing his wife, and was beyond the sentencing court's power to control or predict insomuch as it was dependent upon the outcome of a separate court proceeding seeking the termination of parental rights, (*see* Opinion Denying PCR relief, Document 11

5

> attached to ECF No. 8, explaining that "[f]or parental rights to be terminated, the [State] must [bring a separate action and in that action] prove by clear and convincing evidence" that Petitioner is unfit to retain those rights, with "incarceration alone [being] insufficient to prove parental unfitness"), [termination of Petitioner's parental rights] was at best a [possible] collateral consequence [of his guilty plea] and was not something that counsel was required to discuss with Petitioner prior to his guilty plea.

(ECF No. 9 at ¶ 7). Because counsel was not required to discuss with Petitioner the potential that his parental rights could be terminated by a separate proceeding following Petitioner's guilty plea, counsel was not constitutionally deficient in failing to inform Petitioner of those consequences. As such, the decision of the New Jersey state courts rejecting this claim was neither contrary to nor an unreasonable application of Supreme Court precedent or the facts of this matter, and Petitioner is not entitled to habeas relief on this claim.

Petitioner next claims that counsel misadvised him that he was likely only to be sentenced on the "lowest end of the sentencing spectrum on aggravated manslaughter of ten . . . years" when he instead received a sentence of eighteen years. (*See* Document 2 attached to ECF No. 1 at 4). Petitioner's contentions, however, are belied by the record of Petitioner's plea hearing. As the discussion at the plea hearing makes explicitly clear, although Petitioner's counsel intended to argue for a ten-year sentence, the prosecution stated its intention to seek a sentence of twenty years. (Document 26 attached to ECF No. 8 at 12-13). The sentencing court likewise informed Petitioner that it had not yet decided where Petitioner was likely fall within the applicable ten- to twenty-year sentencing range, and that the court was making no promises as to what sentence in that range Petitioner would receive. (*Id.* at 13-14). The trial court also explained to Petitioner that regardless of what sentence he received between ten and twenty years, he would be subject to an eighty-five percent parole disqualifier resulting in a minimum period of parole ineligibility of between approximately eight and a half years if Petitioner received a ten-year sentence and seventeen years

if Petitioner received a twenty-year sentence. (*Id.* at 14-15). It was also clarified on the record that although the crime to which Petitioner pled guilty carried a statutory maximum sentence of thirty years, by virtue of his plea agreement Petitioner faced a maximum sentence of twenty years and a minimum of ten, and that "the only promise that's being made is that the sentence will be somewhere in that range," all of which Petitioner said he understood. (*Id.* at 15-16). It is thus clear that Petitioner was clearly advised as to the sentencing range he faced by the plea court, if not by counsel, and that any suggestion by counsel that Petitioner would only receive a ten-year sentence was corrected by the plea court during the adequate plea hearing Petitioner received. *See Bui*, 795 F.3d at 366-67; *Shedrick*, 493 F.3d at 299. Petitioner is therefore not entitled to habeas relief on this claim.

Petitioner also asserts that his plea counsel was constitutionally ineffective in failing to object to what Petitioner contends was an insufficient factual basis for his guilty plea to aggravated manslaughter. Pursuant to New Jersey law, an individual commits aggravated manslaughter when he "recklessly causes death under circumstances manifesting extreme indifference to human life." *State v. Galicia*, 210 N.J. 364, 378 (2012). A defendant acts sufficiently recklessly to support a conviction for aggravated manslaughter when the defendant was aware that "it [wa]s probable that death [would] result from [his] conduct." *Id.* The conduct to which Petitioner admitted during his plea colloquy clearly supported his conviction for aggravated manslaughter. Specifically, during that colloquy, Petitioner admitted that during an argument he "grab[bed the victim] by the neck" and "choke[d] her . . . [u]ntil she was unconscious," resulting in her death. (*See* Document 26 attached to ECF No. 8 at 22-23). Petitioner also admitted that he understood that his actions caused the victim's death. (*Id.* at 23). As the PCR court held, "[t]his testimony that Petitioner choked the victim until she became unconscious causing her death clearly established that Petitioner acted

7

with reckless indifference to the value of human life." (Document 11 attached to ECF No. 8 at 7). Petitioner thus provided an adequate factual basis to support his guilty plea, and any objection to the factual basis by counsel would have been utterly without merit. Counsel was thus not ineffective in not objecting to this factual basis. *See Wets v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) (counsel cannot be deemed ineffective for failing to raise a meritless claim); *see also United States v. Aldea*, 450 F. App'x 151, 152 (3d Cir. 2011).

Petitioner also claims that his plea counsel was ineffective in not securing for Petitioner a more favorable plea deal – specifically a plea to passion/provocation manslaughter. A criminal defendant has "no right to be offered a plea . . . nor a federal right that the judge accept it." *Lafler*, 566 U.S. at 168. Thus, where a petitioner fails to show that the State would have offered a more favorable plea offer, the petitioner cannot show that he was prejudiced by counsel's failure to secure a more favorable deal. *See, e.g., Missouri v. Frye*, 566 U.S. 134, 147-49 (2012) (prejudice as to "lost" plea deal requires showing that State would have offered and would not have withdrawn a given plea deal had the petitioner accepted it). Petitioner has presented no evidence that the State ever considered, let alone offered him a plea to passion/provocation manslaughter, involuntary manslaughter, or any other lesser offense. Indeed, as explained by the PCR court, the facts of Petitioner's case were "inconsistent with passion provocation manslaughter" as Petitioner was not adequately provoked to support such a defense under state law.[2] (See Document 11

---

[2] It also appears that both Petitioner and his sentencing counsel agreed as counsel informed the sentencing court that "after discussing [passion/provocation manslaughter] and showing him the [applicable] jury charge as well as other law, [Petitioner] has come around to the belief that this may not have been passion provocation manslaughter" and that he was therefore "prepared to be sentenced" based on his plea of "aggravated manslaughter." (Document 27 attached to ECF No. 8 at 10-11). Thus, it appears that even Petitioner was aware that the passion/provocation defense was untenable in this matter. Because such a defense was not tenable in this matter as found by the state courts, Petitioner was not prejudiced by counsel failing to pursue such a defense, either

8

attached to ECF No. 8 at 5-6). It is therefore doubtful that the State even *could* have offered such a plea under state law, and there is no evidence that any such offer was ever extended in this matter. Instead, the record contains a letter indicating that Petitioner's plea counsel sought a plea deal from the State for passion/provocation manslaughter, and the State specifically rejected a plea deal for that or any other charge lesser than aggravated manslaughter. (Document 25 attached to ECF No. 8). As such, Petitioner cannot show that he was prejudiced by counsel's failure to obtain a plea deal for a charge less than aggravated manslaughter as no such offer was ever extended and the State rejected the possibility of such an offer. Petitioner is thus not entitled to relief on this claim.

In a related claim, Petitioner contends that plea counsel was ineffective in failing to fully investigate his case, and that, had counsel so investigated, Petitioner believes potential witnesses, text messages, and telephone records would have provided him with a defense. Petitioner, however, utterly fails to identify any such witnesses, nor does he explain what text messages or telephone records he believes would have served as his defense. Although a failure to investigate potentially exculpatory evidence or witnesses can form the basis of ineffective assistance of counsel, such a claim still requires a petitioner to show that he was prejudiced. *See, e.g., Brown v. United States*, No. 13-2552, 2016 WL 1732377, at *4-5 (D.N.J. May 2, 2016). To make this showing, a petitioner "must make a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained . . . and whether such information, assuming admissibility in court, would have produced a different result." *Id.* (quoting *United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996) (internal quotation marks omitted)). As noted by the PCR court, Petitioner has utterly failed to make such

---

through seeking a "better" plea to passion provocation manslaughter or by raising it as a defense prior to the entry of Petitioner's guilty plea.

a showing, and has presented nothing more than a string of conclusory allegations as to the prejudice prong of *Strickland* in relation to his failure to investigate claim. As Petitioner has provided no evidence in support of his claims and has provided no more than self-serving allegations as to *Strickland's* prejudice prong, his failure to investigate claim is utterly without merit and provides no basis for habeas relief. *See, e.g., Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010).

In his final claim, Petitioner asserts "that counsel failed to properly advise him as to the elements of aggravated manslaughter, murder, reckless manslaughter, and involuntary manslaughter." (Document 2 attached to ECF No. 1 at 4). Petitioner, however, fails to explain this claim. He does not allege what advice he did receive, nor does he provide any information about what information he believes was lacking or how the alleged lack of information had any effect upon the outcome of his plea proceedings. Because Petitioner has provided no more than his own vague and unsupported allegations as to counsel's failings and has failed to even provide any allegations as to *Strickland's* prejudice prong, this claim is insufficient to warrant habeas relief. *Palmer*, 592 F.3d at 395. Because this and all of Petitioner's habeas claims are without merit, this Petitioner's habeas petition shall be denied.

### III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of a state court proceeding unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate

10

to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). For the reasons expressed above, Petitioner's claims are all without merit and jurists of reason would therefore not disagree with this Court's denial of Petitioner's habeas petition. Petitioner is therefore denied a certificate of appealability.

## IV. CONCLUSION

For the reasons stated above, Petitioner's petition for a writ of habeas corpus is DENIED, and Petitioner is DENIED a certificate of appealability. An appropriate order follows.

JOSE L. LINARES,
Chief Judge, United States District Court